IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENNSYLVANIA APPAREL, LLC, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BRIGADE MANUFACTURING, INC., | : | No. 20-1265 |
| Defendant. | : | |

## MEMORANDUM OPINION

Timothy R. Rice                                                              January 26, 2022
U.S. Magistrate Judge

    This action arises from three contracts between Plaintiff Pennsylvania Apparel LLC, a clothing manufacturer and wholesale distributer, and Defendant Brigade Manufacturing, Inc., a clothing manufacturer holding several federal contracts with the Defense Logistics Agency – Troop Support ("DLATS").  Pennsylvania Apparel alleges that: (1) Brigade breached the three contracts by failing to pay for shirts manufactured and delivered pursuant to the contracts, and (2) Brigade's failure to pay has resulted in unjust enrichment.  See Compl. ¶¶ 23-36 (doc. 1).  Brigade counterclaims, alleging that Pennsylvania Apparel breached the three contracts by withholding payments and failing to supply certain fabric and other components.  See Ans. (doc. 6), ¶¶ 43-46.[1]

    Brigade seeks summary judgment on its breach of contract counterclaim, as well as Pennsylvania Apparel's breach of contract and unjust enrichment claims.  See Mot. for Partial Summary Judgment 13-14 (doc. 30).  For the following reasons, I will grant Brigade's motion as

---

[1]     Brigade had brought three counterclaims alleging that Pennsylvania Apparel intentionally interfered with Brigade's contracts with other entities.  See Ans. ¶¶ 47-58.  Those claims were voluntarily dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).  See Stipulation of Dismissal (doc. 32).

to the unjust enrichment claim and deny Brigade's motion as to the breach of contract claims. The parties' contractual claims are mired in factual disputes that preclude summary judgment, and because the unjust enrichment claim is based on written contracts, it is legally flawed.

I.  **LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Clear Hearing Sols., LLC v. Cont'l Cas. Co., 513 F. Supp. 3d 566, 570 (E.D. Pa. 2021) ("The moving party bears an initial burden of proving a lack of any genuine issues of material fact.") (citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 & n.10 (1986)); Deutsch v. Namerow, No. 17-4364, 2019 WL 3714473, at *1 (E.D. Pa. Aug. 7, 2019) ("The moving party bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.") (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986)). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." Id. I must view the facts and related inferences in the light most favorable to the nonmoving party. Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004). "[My] role is 'to determine whether there is a genuine issue for trial,' it is 'not . . . to weigh the evidence and determine the truth of the matter.'" Peroza-Benitez v. Smith, 994 F.3d 157, 164 (3d Cir. 2021) (quoting Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019)).

Under Pennsylvania law,[2] a party asserting a breach of contract claim must establish: (1) "the existence of a contract, including its material terms"; (2) "breach of a duty imposed by the contract"; and (3) "resultant damages." Gladstone Tech., Partners, LLC v. Dahl, 222 F. Supp. 3d 432, 440 (E.D. Pa. 2016). To state a claim for unjust enrichment, the plaintiff must show that: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit." Kenney v. Am. Bd. of Internal Med., 412 F. Supp. 3d 530, 551-52 (E.D. Pa. 2019). "[U]njust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.'" SodexoMAGIC, LLC v. Drexel Univ., -- F.4th --, Nos. 19-1028 & 19-1107, 2022 WL 176427, at *27 (3d Cir. 2022) (quoting Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006)).

## II.    FACTUAL BACKGROUND[3]

In 2015, Brigade bid on a DLATS contract to manufacture and supply the U.S. Army with white dress shirts. Statement of Material Facts ¶ 3; Ans. to Statement of Material Facts ¶ 3. On June 1, 2015, Brigade contracted with Pennsylvania Apparel to supply materials to Brigade should it be awarded the DLATS contract ("2015 Contract"). See Compl. Ex. A; see also Statement of Material Facts ¶ 3; Ans. to Statement of Material Facts ¶ 3; Mot. 1. Pursuant to the 2015 Contract,

---

[2]    The parties agree that Pennsylvania law applies. See Mot. 18 n.1; Opp Br. 5 n.3.

[3]    I view all facts in the light most favorable to Pennsylvania Apparel, and, unless otherwise indicated, all facts are derived from Brigade's Statement of Material Facts (doc. 30-2), Pennsylvania Apparel's related response (doc. 33), and the parties' accompanying affidavits (docs. 30 and 33).

Pennsylvania Apparel agreed "to furnish Brigade . . . all fabric and components (except thread), which are required to manufacture and pack" the shirts. Compl. Ex. A, ¶ 1. Brigade was awarded the DLATS contract ("DLATS Contract No. 1065"). Statement of Material Facts ¶ 4; Ans. to Statement of Material Facts ¶ 4.

As part of the 2015 Contract, the parties agreed that DLATS's payments to Brigade under DLATS Contract No. 1065 would be deposited into a Bank of America account owned by Brigade, but over which Pennsylvania Apparel had "signature power." See Compl. Ex. A ¶¶ 7-8. Pennsylvania Apparel would pay Brigade from the funds deposited by DLATS into the bank account based on an agreed-upon fixed price for each shirt that was manufactured, shipped, and accepted by the government customer. See Statement of Material Facts ¶¶ 7-12; Ans. to Statement of Material Facts ¶¶ 7-12; see also Compl. Ex. A, Schedule A.

In support of payments owed, Brigade initially provided Pennsylvania Apparel with an invoice and a signed bill of lading for each shipment. Statement of Material Facts ¶ 7; Ans. to Statement of Material Facts ¶ 7. That payment process eventually changed, and Brigade then began billing Pennsylvania Apparel weekly for shirts based only on invoices. Statement of Material Facts ¶ 12; Ans. to Statement of Material Facts ¶ 12 (denying that this practice ever became a binding term of the 2015 Contract).

In March 2017, the parties agreed to a second contract ("2017 Contract") involving Brigade's bid for a DLATS contract to manufacture gray dress shirts for the U.S. Army. Statement of Material Facts ¶ 13; Ans. to Statement of Material Facts ¶ 13. The 2017 Contract repeats the material terms of the 2015 Contract. Statement of Material Facts ¶ 15; Ans. to Statement of Material Facts ¶ 15. Brigade was awarded the DLATS contract to manufacture the gray shirts ("DLATS Contract No. 1049"), Statement of Material Facts ¶ 14, Ans. to Statement of Material

4

Facts ¶ 14, and the parties continued using the same payment plan and billing practice as governed their relationship pursuant to the 2015 Contract, see Compl. Ex. B, ¶¶ 7-8; Statement of Material Facts ¶ 18; Ans. to Statement of Material Facts ¶ 18 (denying that the billing practice ever became a binding term of the 2017 Contract).

In October 2018, the parties agreed to a third contract ("2018 Contract") involving Brigade's bid for a DLATS contract to manufacture blue dress shirts for the U.S. Air Force. Statement of Material Facts ¶ 19, Ans. to Statement of Material Facts ¶ 19.  The 2018 Contract repeats the material terms of the 2015 and 2017 Contracts.  Statement of Material Facts ¶ 21, Ans. to Statement of Material Facts ¶ 21.  Brigade was awarded the DLATS contract to manufacture the blue shirts ("DLATS Contract No. 1121"), Statement of Material Facts ¶ 20, Ans. to Statement of Material Facts ¶ 20, and the parties continued using the same payment plan and billing practice that governed their relationship pursuant to the 2015 and 2017 Contracts, see Compl. Ex. C, ¶¶ 7-8; Statement of Material Facts ¶ 24; Ans. to Statement of Material Facts ¶ 24 (denying that the billing practice ever became a binding term of the 2018 Contract).

The parties largely dispute the underlying material facts hereafter.  As relevant to Brigade's motion for partial summary judgment, the facts generally fall into four categories: (1) Pennsylvania Apparel's so-called "ultimatums"; (2) Pennsylvania Apparel's supply of fabric and other components to Brigade; (3) Pennsylvania Apparel's payment to Brigade for radio-frequency identification ("RFID")-labeled shirts; and (4) Pennsylvania Apparel's withholding of payments to Brigade.

   A. **Pennsylvania Apparel's So-Called "Ultimatums"**

Brigade claims that Pennsylvania Apparel "supplied fabric and other materials for the manufacture of shirts at supply levels lower than requested by Brigade."  Statement of Material

Facts ¶ 29.  Brigade maintains that the lack of fabric and materials was causing it to operate at less than capacity, so, "[i]n mid-2019, [it] began discussions with Fechheimer Brothers Company, an apparel manufacturer . . . with the goal of becoming a subcontractor to Fechheimer in the manufacture of shirts for the US Postal Service."  Id. at ¶¶ 29-31.  Several months later, Brigade contends Pennsylvania Apparel objected to the proposed Fechheimer deal.  Id. at ¶ 32.  Brigade nevertheless contracted with Fechheimer to manufacture shirts in October 2019.  Id.  That same month, Brigade states that Pennsylvania Apparel "demanded that Brigade advise Fechheimer that any work performed by Brigade for Fechheimer must be coordinated by Michael Mansh, a member of [Pennsylvania Apparel]," who was to be made Fechheimer's point of contact at Brigade.  Id. at ¶ 33.

Around this same time, DLATS awarded Brigade two contracts to manufacture trousers, one with the U.S. Army ("DLATS Contract No. 72") and the other the U.S. Marine Corps ("DLATS Contract No. 79").  Id. at ¶ 34.  On December 9, 2019, Brigade claims that Pennsylvania Apparel threatened to terminate the 2015, 2017, and 2018 Contracts if Brigade did not (1) "notif[y] Fechheimer that all business performed by Brigade for Fechheimer must be administered by . . . Mansh," and (2) request that DLATS permit Brigade to "novate" the two trouser contracts to a different entity.  Id. at ¶ 36.  Brigade contends that Mansh repeated the same demands on December 11, 2019, adding that Pennsylvania Apparel "had deliberately postponed placing orders for fabric . . . for delivery to Brigade until such time as Brigade decided to accept or reject [Pennsylvania Apparel's] ultimatums" and would otherwise "cease supplying Brigade with fabric and other necessary components."  Id. at ¶¶ 38-39.  Brigade maintains that, on December 14, 2019, Jamie Davenport—president of Brigade—sent Pennsylvania Apparel a letter in which he rejected Pennsylvania Apparel's "ultimatums" and considered the "ultimatums" a breach of the parties'

6

contracts. Id. at ¶ 40 (citing Affidavit of Jamie Davenport, ¶ 37). According to Brigade, "Pennsylvania Apparel continued to insist that Brigade accede to its demands and on January 10, 2020, Brigade advised [Pennsylvania Apparel] by letter that it considered the 2015, 2017 and 2018 Contracts to be terminated." Id. at ¶ 41.

Although Pennsylvania Apparel acknowledges that Brigade may have asked it to provide "more" fabric, it denies "fail[ing] to deliver the fabric which was necessary for [Brigade] to manufacture the shirts required under the DLATS contracts." Ans. to Statement of Material Facts ¶¶ 29-30. Pennsylvania Apparel maintains that Brigade submitted no evidence, aside from self-serving affidavits, concerning its capacity to manufacture additional shirts. Id. at ¶ 29. Instead, it contends that Brigade "admitted in June 2019 that [its] old machinery, and not a lack of fabric, was preventing [it] from producing more . . . shirts per week." Id. (citing Affidavit of Michael Mansh, ¶ 17 & Ex. 3). Pennsylvania Apparel denies that it made any demands or ultimatums to Brigade as to its agreement with Fechheimer and submits that Brigade agreed that Mansh would serve as "point" on discussions with Fechheimer. Id. at ¶¶ 32-33, 36, 38-40 (citing Mansh Aff. at ¶¶ 18-27 & Exs. 4-6). Pennsylvania Apparel acknowledges expressing concerns to Brigade regarding its ability to finance the DLATS trouser contracts, but Pennsylvania Apparel denies demanding that Brigade transfer or "novate" them. Id. at ¶¶ 35-36, 38-40. According to Pennsylvania Apparel, when Brigade terminated the 2015, 2017, and 2018 Contracts in January 2020, Pennsylvania Apparel remained in compliance with the terms of all three contracts. Id. at ¶ 41.

B.     **Pennsylvania Apparel's Supply of Fabric and Other Components to Brigade**

According to Brigade, "[b]eginning in November 2019, [Pennsylvania Apparel's] shipments of fabric and other materials [to Brigade] slowed considerably," which reduced the

7

number of shirts that Brigade was able to supply under its DLATS contracts. Statement of Material Facts ¶¶ 50-51. In January 2020, Brigade maintains that it attempted to purchase fabric directly from Pennsylvania Apparel's supplier, Milliken, because it did not have fabric to produce the shirts required under DLATS Contract Nos. 1065, 1049, and 1121. Id. at ¶¶ 51-52. Milliken informed Brigade that the needed fabric would not be available for two to three months. Id. at ¶ 52. Because it was not able to procure fabric to meet its obligations under the DLATS contracts, Brigade claims it lost revenue for several months, precluding it from purchasing fabric when the fabric became available from Milliken. Id. at ¶¶ 53-55. Eventually DLATS terminated DLATS Contract Nos. 1065 and 1121, and it did not exercise the option to continue DLATS Contract No. 1049. Id. at ¶ 55.

Brigade also contends that Pennsylvania Apparel was "obligated to," but did not, supply Brigade with certain components other than fabric, including: plotter paper, separating tissue, underlay, marketing paper, underlay for lining, kraft paper, fasteners, brown tape, shrink wrap, and pallets. Id. at ¶ 45. According to Brigade, it "was forced to acquire [these components] . . . from alternate sources . . . and incurred costs totaling $39,963.95 doing so." Id. at ¶ 46 (citing Davenport Aff. ¶¶ 42-43; Affidavit of Kenneth Barber, ¶ 17).

Pennsylvania Apparel counters that it "never stopped supplying fabric to [Brigade] in the amount required under the parties' three contracts." Ans. to Statement of Material Facts ¶ 51. Pennsylvania Apparel suggests that, aside from self-serving affidavits, Brigade has failed to produce any evidence pertaining to its communications with Milliken, its fabric stock, its ability to meet its obligations under the DLATS contracts, or its relevant financial status. Id. at ¶¶ 52-55. Pennsylvania Apparel also denies that it was required under the 2015, 2017, and 2018 Contracts

8

to provide Brigade with the listed components and highlights that it disputed this obligation in an email to Brigade on January 24, 2020. Id. at ¶ 45 (citing Mansh Aff. ¶ 29 & Ex. 8).

### C. Pennsylvania Apparel's Payment to Brigade for RFID-Labeled Shirts

Brigade contends that DLATS modified DLATS Contracts 1049 and 1065 to require RFID-labels on all manufactured garments. Statement of Material Facts ¶ 47. Brigade entered into an agreement with Pennsylvania Apparel whereby Pennsylvania Apparel "would pay Brigade an additional $0.08 per shirt manufactured by Brigade with RFID labels to cover the additional labor costs to Brigade associated with affixing the RFID labels to such shirts." Id. Brigade maintains that it manufactured 375,400 RFID-labeled shirts, yet Pennsylvania Apparel did not pay it the additional agreed-upon labor costs, amounting to $30,032.00. Id. at 48.

Pennsylvania Apparel asserts that the 2015, 2017, and 2018 Contracts were never modified or amended to provide for an additional payment of $0.08 for RFID-labeled shirts. Ans. to Statement of Material Facts ¶ 47-48. Additionally, it denies that DLATS Contract 1049 contained an RFID modification. Id. at ¶ 47.

### D. Pennsylvania Apparel's Withholding of Payments to Brigade

Brigade claims that DLATS withheld payments on two separate occasions (one in 2017 and the other in 2018) at the direction of the Internal Revenue Service due to unpaid taxes. Statement of Material Facts ¶¶ 25-26. Brigade claims that it agreed Pennsylvania Apparel "could withhold certain agreed upon amounts due Brigade under the 2015 and 2017 Contracts until [Pennsylvania Apparel] had recouped" the amounts it was due under such contracts. Id. at ¶ 26 (citing Davenport Aff. ¶ 22). By October 2018, Brigade maintains that it had paid the amount due to Pennsylvania Apparel, see id. at ¶ 27, which nevertheless "continued to withhold on a weekly

9

basis portions of the amounts due Brigade under the 2015, 2017[,] and 2018 Contracts . . . contend[ing] that it was entitled to create a fund that it would hold to insure against any further disruption in its cash flow as a result of any future IRS-directed withholdings," id. Brigade states that Pennsylvania Apparel's improperly withheld amount totals $46,532.00. Id. at ¶ 28.

Pennsylvania Apparel acknowledges that it withheld payments from Brigade due to the IRS seizure. Ans. to Statement of Material Facts ¶¶ 25-26. It claims that Brigade returned some of the funds owed to it but still owes money "for the bank fees and interest on the funds taken from [Pennsylvania Apparel] by the IRS." Id. (citing Mansh Aff. ¶¶ 11-12). Pennsylvania Apparel contends that it "paid all amounts which were owed to [Brigade] under . . . the parties' three contracts." Id. at ¶ 27-28.

## III.   ANALYSIS

Viewing the facts in the light most favorable to Pennsylvania Apparel, there are genuine disputes of material fact that preclude summary judgment as to Brigade's and Pennsylvania Apparel's breach of contract claims. I will grant summary judgment as to Pennsylvania Apparel's unjust enrichment claim because it fails as a matter of law.

### A.   Brigade's Breach of Contract Counterclaim

Brigade argues that it is entitled to summary judgment as to its breach of contract counterclaim because Pennsylvania Apparel: (1) repudiated the three agreements and failed to supply Brigade with fabric and necessary components to manufacture the shirts; (2) failed to pay Brigade for additional labor costs associated with affixing RFID labels to the shirts; and (3) has been withholding monies owed to Brigade for shirts manufactured and shipped to the government

customer. Mot. 15-19. Resolution of those issues feature disputed facts that preclude summary judgment.

### 1. There Are Genuine Disputes of Material Fact as to Whether Pennsylvania Apparel Repudiated the 2015, 2017, and 2018 Contracts by Conditioning Its Delivery of Fabric and Other Components to Brigade on Two "Ultimatums"

Brigade argues that Pennsylvania Apparel, beginning in 2019, improperly conditioned shipments of fabric and other components to Brigade on Brigade's promise to (1) "request the right to novate its government trouser contracts . . . to a separate entity," and (2) "advise Fechheimer that any work performed by Brigade for Fechheimer must be coordinated by Michael Mansh . . . such that Mansh be made Brigade's point of contact for Fechheimer and [Pennsylvania Apparel] be able to control any work Brigade did for Fechheimer." Mot. 15-16. Brigade suggests that imposing such "ultimatums" amounts to repudiation of the 2015, 2017, and 2018 Contracts. Id. at 16-17. Because of Pennsylvania Apparel's repudiation, Brigade reasons that "[i]t was entitled to treat [Pennsylvania Apparel's] assertions of its present intent not to perform as an immediate breach of the Contracts." Id. at 17 (citing Franconia Assocs. v. United States, 536 U.S. 129, 142-43 (2002)). The genuine disputes of material fact include:

- Whether Pennsylvania Apparel's discussion with Brigade "concerning the parties' obligations under the contracts and [Pennsylvania Apparel's] understandable and reasonable concern about [Brigade's] financial viability while undertaking additional obligations under the two new trouser contracts" amounted to an "absolute and unequivocal refusal to perform." Opp. Br. 5-6 (citing 2041 Pa. Ave. Corp. v. Fed'n of Jewish Agencies of Greater Phila., 489 A.2d 733, 736 (1985));[4] compare, e.g., Statement of Material Facts

---

[4]   "Anticipatory repudiation is a type of breach wherein a party 'entails an essential

11

¶¶ 38-41 (stating that Pennsylvania Apparel placed "ultimatums" on Brigade and insisted that Brigade agree to its demands), with Ans. to Statement of Material Facts ¶¶ 38-41 (denying that any "demands" were placed on Brigade).

- Whether Pennsylvania Apparel failed to supply the necessary quantity of fabric to Brigade pursuant to the three contracts. See Opp. 7; compare, e.g., Statement of Material Facts ¶¶ 50-51 ("Beginning in November 2019, [Pennsylvania Apparel's] shipments of fabric and other materials slowed considerably. . . . By the end of December 2019, Brigade had on hand only enough fabric supplied by [Pennsylvania Apparel] to manufacture approximately 10,000 of the shirts it was obligated to produce under its government contracts.") (citing Davenport Aff. ¶ 35; Barber Aff. ¶ 20), with Ans. to Statement of Material Facts ¶ 38 ("[Pennsylvania Apparel] never stopped supplying fabric to [Brigade] in the amount required under the parties' three contracts[.]").

- Whether Brigade could not comply with its DLATS contracts "due to the lack of fabric" from Pennsylvania Apparel. See Opp. 7; compare Statement of Material Facts ¶ 53 ("Because Brigade was unable to find an immediate supply of fabric to replace the fabric [Pennsylvania Apparel] was supposed to provide to Brigade under the 2015, 2017[,] and 2018 Contracts, Brigade was unable to manufacture and ship to the government the shirts Brigade was required to produce under DLATS Contracts Nos. 1065, 1049, and 1121."),

---

declaration of an intention to breach' the agreement." Ruggiero v. Nocenti, -- F. Supp. 3d --, No. 18-3047, 2021 WL 3754599, at *8 (E.D. Pa. Aug. 25, 2021) (quoting Harrison v. Cabot Oil & Gas Corp., 110 A.3d 178, 184 (Pa. 2015)).  Under Pennsylvania law, repudiation requires "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." Deutsch, 2019 WL 3714473, at *2 (quoting Andrews v. Cross Atl. Cap. Partners, Inc., 158 A.3d 123, 130 (Pa. Super. Ct. 2017)).

with Ans. to Statement of Material Facts ¶ 53 (stating that there is insufficient evidence to know whether Brigade could not comply with its DLATS contracts due to a lack of fabric).

- Whether Brigade was in default of its contracts with DLATS "for failure to deliver shirts due to a lack of needed fabric." Opp. Br. 7; compare, e.g., Statement of Material Facts ¶ 55 ("Brigade was unable to purchase additional fabric in a sufficient timeframe to allow Brigade to meet the production requirements under the DLATS Contracts, and DLATS terminated DLATS Contract Nos. 1065 and 1121. . . . [And it] did not exercise its option to continue DLATS Contract No. 1049[.]"), with Ans. to Statement of Material Facts ¶ 55 ("[Brigade] does not offer any documentary evidence as to these terminations and the basis therefor.").

- Whether Pennsylvania Apparel was under any obligation to provide the listed "components" to Brigade pursuant to the contract, and, if so, the cost incurred by Brigade for not receiving the components. See Opp. Br. 8; compare, e.g., Statement of Material Facts ¶¶ 45-46 ("Under the 2015, 2017[,] and 2018 contracts, [Pennsylvania Apparel] was obligated to supply Brigade with all fabric and components (except thread). . . . [Pennsylvania Apparel] failed to supply Brigade with the [listed] components (other than fabric) necessary for the manufacture and packing of the shirts[.] . . . Brigade was forced to acquire the components . . . from alternate sources . . . incur[ing] costs totaling $39,963.95 in doing so."), with Ans. to Statement of Material Facts ¶¶ 45-46 ("The three contracts are in writing and speak for themselves. . . . [I]t is denied that the 'components' listed herein were contractually required to be supplied to [Brigade] by [Pennsylvania Apparel]. . . . [Brigade] does not attach any documentary evidence (e.g., emails, letters,

demand, notices) to show that it actually acquired the 'components' and the costs it incurred therefor.").

Because Brigade has not met its burden of proving a lack of genuine dispute of material fact, see Clear Hearing Sols., LLC, 513 F. Supp. at 570, it has failed to show that it is entitled to summary judgment on its breach of contract claim as it relates to repudiation.

### 2. There Are Genuine Disputes of Material Fact as to Whether the Parties Modified or Amended Their Contracts to Include a Provision Concerning Payment Related to the Manufacturing of RFID-Labeled Shirts

According to Brigade, Pennsylvania Apparel agreed to pay Brigade $0.08 in additional labor costs for each shirt that Brigade manufactured with an affixed RFID label. Mot. 19. Brigade contends that Pennsylvania Apparel failed to pay the additional amount for the RFID-labeled shirts manufactured, amounting to $30,032.00, and is therefore in breach of the three contracts. Id. Pennsylvania Apparel contests its obligation to pay Brigade additional costs for the RFID-labeled shirts because there was no relevant amendment or modification in writing of the parties' contracts. Opp. Br. 9.

First, there is a dispute of material fact as to whether DLATS Contract 1049 contained an RFID-related modification. Compare Statement of Material Facts ¶ 47, with Ans. to Statement of Material Facts ¶ 47. Second, although the parties agree that DLATS Contract 1065 did contain a modification, see Mot. 19; Opp. Br. 9, there are genuine disputes of material fact as to the existence of, and, if applicable, the scope of, any modification or amendment to the parties' contracts that provides for a payment of additional labor costs for RFID-labeled shirts. Compare Statement of Material Facts ¶¶ 47-48 ("[Pennsylvania Apparel] and Brigade agreed that [Pennsylvania Apparel] would pay Brigade an additional $0.08 per shirt manufactured by Brigade with RFID labels[.]"), with Ans. to Statement of Material Facts ¶¶ 47-48 ("[P]aragraph 19 of the 2015 Agreement says:

'This Agreement may be changed, modified or amended only by a writing signed by the Parties.' . . . [T]he contracts were never modified or amended by a writing signed by the parties to provide for such payment."). This precludes summary judgment.

### 3. There Are Genuine Disputes of Material Fact as to Whether Pennsylvania Apparel Improperly Withheld Money Owed to Brigade

According to Brigade, the parties agreed that Pennsylvania Apparel could withhold "enough money" from Brigade "to recoup the monies that it was due from one withheld payment from the government occurring in May 2018." Mot. 19. Brigade claims Pennsylvania Apparel is improperly withholding $46,532.00 from it "for the shirts it manufactured and shipped to the government," notwithstanding the parties' withholding agreement. Id.

As an initial matter, Brigade does not cite any evidence to support its claim, see Mot. 19, and its statement of facts, along with supporting affidavits, feature only conclusory, self-serving language, see, e.g., Statement of Material Facts ¶ 28; Davenport Affidavit ¶ 24. Brigade has failed to satisfy its burden under Rule 56. Maldonado v. Ramirez, 757 F.2d 48, 51 (3d Cir. 1985) ("An affidavit that is 'essentially conclusory' and 'lacking in specific facts' is inadequate to satisfy the movant's burden.") (quoting Drexel v. Union Prescription Ctrs., Inc., 582 F.2d 781, 789-90 (3d Cir. 1978)). There are genuine disputes of material fact that preclude summary judgment, which include: (1) the nature and scope of any agreement between the parties with regard to payment withholding, (2) whether Pennsylvania Apparel owes Brigade money, and (3) if so, the amount of monies owed. Compare, e.g., Statement of Material Facts ¶¶ 26-27 ("By October 18, 2018 . . . [Pennsylvania Apparel] had recovered all amounts it was due from the amounts withheld by the government in May 2018; nonetheless, [Pennsylvania Apparel] continued to withhold on a weekly basis portions of the amounts due Brigade under the 2015, 2017[,] and 2018 Contracts."), with

15

Ans. to Statement of Material Facts ¶¶ 26-27 ("[Pennsylvania Apparel] paid all amounts which were owed to [Brigade] under the terms of the parties' three contracts.")

### B.   Pennsylvania Apparel's Breach of Contract Claim

Brigade argues that it is entitled to summary judgment on Pennsylvania Apparel's breach of contract claim because Pennsylvania Apparel's breach excused any failure on Brigade's part to perform under the 2015, 2017, and 2018 Contracts. Mot. 19-20 (suggesting that Pennsylvania Apparel's alleged breach of contract "excuse[d] any nonperformance by Brigade"). Because the same genuine disputes of material fact underlying Brigade's breach of contract counterclaim will be determinative of Pennsylvania Apparel's breach of contract claim, I will likewise deny summary judgment as to Pennsylvania Apparel's breach of contract claim.

### C.   Pennsylvania Apparel's Unjust Enrichment Claim

Brigade argues that Pennsylvania Apparel's unjust enrichment claim fails because the entirety of its relevant business relationship with Pennsylvania Apparel falls within the contours of the three contracts, and "[i]t is well-settled in Pennsylvania that the existence of a contract prevents a party from bringing a claim for breach for unjust enrichment." Mot. 20 (quoting Vantage Learning (USA), LLC v. Edgenuity, Inc., 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017)). Pennsylvania Apparel acknowledges that Pennsylvania law precludes recovery on an unjust enrichment claim when a valid contract exists between the parties but maintains that it "is entitled to proceed on its claim of unjust enrichment" if its breach of contract claim fails. Opp. Br. 11.

Although a party may plead unjust enrichment in the alternative to a breach of contract claim, see SodexoMAGIC, LLC, No. 19-1028 & 19-1107, 2022 WL 176427, at *27, unjust enrichment is "inapplicable when the relationship between the parties is founded on a written

agreement or express contract." Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987); see Moore Eye Care, P.C. v. ChartCare Sols. Inc., 364 F. Supp. 3d 426, 433 (E.D. Pa. 2019). Because the validity of the three agreements governing the parties' relationship are not in dispute, see Statement of Material Facts ¶¶ 3, 13, 19; Ans. to Statement of Material Facts ¶¶ 3, 13, 19, I will grant summary judgment as to Pennsylvania Apparel's unjust enrichment claim.[5]

## IV. CONCLUSION

For the foregoing reasons, Brigade's motion for partial summary judgment will be denied as to the breach of contract claims and will be granted as to the unjust enrichment claim. An appropriate order follows.

---

[5] Pennsylvania Apparel also argues that its unjust enrichment claim should survive summary judgment because there is "an open question whether [Brigade] has been unjustly enriched by its admitted thievery of the DLATS funds." Opp. Br. 12. Because this allegation is founded upon the parties' relationship pursuant to the 2015, 2017, and 2018 Contracts, it also fails. See Hershey Foods Corp., 828 F.2d at 999.